IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

ROBERT S. WALKER                                                                                    PLAINTIFF

v.                                                          CIVIL ACTION NO.:1:12-CV-00039-SA-DAS

TRONOX, LLC
                                                                                                    DEFENDANT

MEMORANDUM OPINION

Presently before the Court is Defendant's Motion for Summary Judgment [35]. Because Plaintiff has failed to set forth a prima facie case of discrimination or hostile work environment under Title VII, that motion is GRANTED.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant Tronox manufactures a variety of titanium dioxide pigments for use in plastics, paper, and coatings. Plaintiff Robert Walker began employment at Tronox's Hamilton, Mississippi facility as a Trainee in February 2000. The Hamilton facility includes five "Operational Areas" within its overall "Operations Unit." There are four classifications of Operators in each area of the unit: A Operator, B Operator, C Operator, and Trainee. As a matter of practice, Tronox hires entry-level employees as Trainees and then promotes them into a C Operator position. From there, employees are expected to continue qualification and promotion within the unit.

Walker successfully achieved promotions from the position of Trainee in the Oxidation Area, eventually earning placement as a B operator in February 2001. In July 2007, Walker was once again promoted, this time to the position of A Operator. Within the Oxidation Area, there are two A Operator positions: the Aluminum Chloride Operator and the Selas Operator.

Walker's initial promotion and qualification as A Operator placed him in the role of Aluminum Chloride Operator. Walker understood that he would remain in that position until an opening for the more advanced A Operator position—the Selas Operator—became available. As an A Operator, Walker was required to attain both Aluminum Chloride and Selas certification. By 2009, an opening for the Selas Operator position opened and Walker began training once again for advancement. Walker, however, failed on two occasions to earn qualification as the Selas Operator and was therefore demoted back to the position of B Operator. Walker was informed that he would be forced to serve as B Operator until an opening for the A Operator Aluminum Chloride position became available, at which point he would then be allowed to re-qualify.

Shortly thereafter, on June 21, 2010, Walker filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging that he was demoted because of his race. The EEOC subsequently issued Walker a right to sue letter, and he commenced the present action September 28, 2011 in the Circuit Court of Monroe County, Mississippi. Defendant then removed the case to this Court on the basis of federal question jurisdiction. Walker's Second Amended Complaint avers that Defendant is liable for discrimination and unlawful harassment in violation of Title VII. Defendant has filed the present motion for summary judgment, alleging that judgment as a matter of law is due in favor of Tronox.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals both that there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## DISCUSSION

### *Title VII Discrimination*

Because plaintiff has failed to provide any direct evidence of discrimination, he relies on the McDonnell Douglas burden shifting formula to establish his Title VII discrimination claim. McDonnell Douglas Corp v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under that framework, Walker must first establish a prima facie case of discrimination by establishing that he (i) is a member of a protected class, (ii) suffered an adverse employment

3

action, (iii) was qualified for his position, and (iv) was replaced by someone outside of the protected class or was treated less favorably than similarly situated employees outside the protected class. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 345 (5th Cir. 2007). For purposes of the summary judgment motion, Defendant concedes the first two elements of the prima facie case, and contests only whether Walker was qualified for the position and whether he was replaced by someone outside his protected class or was treated less favorably than similarly situated employees outside the protected class. Lee v. Kansas City S. Ry., 574 F.3d 253, 259 (5th Cir. 2009).

This Court, however, finds that even if Walker could show that he was qualified for the position, his prima facie case would fail based on his inability to offer a viable comparator, and the Court therefore analyzes only the final prong. In order to meet the burden necessary to satisfy the fourth prong, Walker must show that he was replaced with someone outside of his protected class or he must be able to show disparate treatment and offer a sufficient comparator. Walker does not allege that he was replaced by someone outside his protected class, but instead ambiguously states that "[o]thers were not demoted for failing to advance higher in the ranks," and "similarly-situated white males were not subject to the verbal test as [was Walker]."

As a general matter, employees with different supervisors, who work for different divisions of a company, or who were subject to an employment decision too remote in time will not be deemed comparable for purposes of the similarly situated analysis. Lee, 574 F.3d at 259. Likewise, employees who suffered an adverse employment decision due to factually distinct conduct will also be excluded from consideration. Id. at 259, 260. Instead, the plaintiff must proffer a comparator who held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and had an essentially comparable

4

history of violations. Id. at 260. Critically, the offense or shortcoming triggering the allegedly disparate treatment must have been nearly identical. Id. Put another way, no presumption of discrimination is raised if the legitimate substantive differences between the plaintiff and proffered comparator adequately explain the disparate treatment. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001) (citing Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 304-05 (5th Cir. 2000).

In the case at hand, Walker's response does not specifically cite a single comparator and he has completely failed to set forth briefing supporting the comparability between himself and other co-employees. See In re Cao, 619 F.3d 410, 435 (5th Cir. 2010) (articulating that the role of the court is "not to create arguments for adjudication" or "raise [them] like a Phoenix from the ashes[,]" but "rather, [the court's] role is to adjudicate the arguments with which [it is] presented."); Williams v. Valenti, 432 F. App'x 298, 303 (5th Cir. 2011) (noting that the district court is not required to scour the record in search of evidence supporting a party's opposition to summary judgment."). Walker does not specifically allude to a "similarly situated white male" who was not subjected to the verbal test, and even this Court's own course of review has failed to reveal any comparators sufficiently capable of a thorough review.

In determining whether a comparator is "nearly identical," the court is required to apply more than a superficial analysis. See Lee, 574 F.3d at 259, 260 ("we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances") (quoting Little v. Republic Ref. Co., Ltd., 924 F.2d 93, 97 (5th Cir. 2001)). Instead, the court must flesh out the similarities and differences between the plaintiff and alleged comparator to determine whether the differences in treatment are sufficient to give rise to the presumption that the employer treated some employees

less favorably based on their race.  See id. at 260; Dodge v. Hertz Corp., 124 F. App'x 242, 244 (5th Cir. 2004) (per curiam) (rejecting premise that conduct was "nearly identical" when proferred infraction was also "dishonest" and instead requiring a heightened degree of analysis); Trotter v. BPB Am., Inc., 106 F. App'x 272, 276-77 (5th Cir. 2004) (per curiam) (finding that misconduct could not be generically compared when one offense arose from fighting with co-employees while the other arose from fighting with union president). Simply put, such an analysis is impossible based on the record before the court.

Walker's deposition testimony falls far short of the specificity required and he has failed to provide any additional evidence of disparate treatment.  Walker's contention that there are other white males who were not required to take the verbal test to advance to the position of Selas Operator hangs solely on his blanket assessment that white males were given a verbal walkthrough instead of a verbal test. This unsupported statement, however, is simply insufficient to avoid summary judgment. Little, 37 F.3d at 1076 (holding that a dispute of material fact is not created by metaphysical doubt, conclusory allegations, or unsubstantiated assertions.). Moreover, Walker himself acknowledges that two white employees and two black employees were subjected to the same testing standards for promotion.  Additionally, when asked whether he had any evidence whether the updated training program had been applied unequally to black and white employees, Walker stated, "I have no evidence, no written evidence."

Walker's contention that other employees were not demoted for failing to be promoted is equally without merit.  It is undisputed that Walker's performance improvement plan specifically stated, "In the event that Robert does not successfully complete the training plan within the described performance period, he will move from 'Operations Technician A' to 'Operations Technician B' and be required to start over with the qualifications for an 'Operations Technician

6

A' position." Walker acknowledges that the expectation was that employees were expected to "train through" promotions as they became available. Further, Tronox has submitted a contemporaneous performance improvement plan for another employee, which also included the clause that the employee would be demoted if she failed to achieve qualification for an available promotion on her second attempt.

In opposition to Tronox's policy regarding promotion, Walker offers only a single instance. Walker states, "At one time another [sic], like I say it's changed, some people were given the option to refuse training and stay as a B operator…I would give a name, Lynn House. And that was back in I would say two thousand---I cannot just give the correct date, but I know that." Walker further testified that House has retired, but that he was the one exception to the policy that employees train through all positions. This one instance, which is attenuated, ambiguous, and occurred under a different policy regime, fails to create any presumption that the alleged disparate treatment of House was due to racial discrimination rather than a difference in circumstances. In fact, even Walker himself acknowledges that the policy of Tronox had been changed at the time of his potential promotion. Decisions rendered based on factually distinct circumstances cannot support a disparate treatment argument for purposes of Title VII. Lee, 574 F.3d at 259.

Having failed to establish the fourth and final prong of the McDonnell Douglas framework, Walker's prima facie case for discrimination under Title VII is due to fail. The Court therefore need not consider Walker's additional arguments regarding Tronox's potential legitimate, non-discriminatory reasons for the adverse employment action. Instead, the Court grants Defendant's motion as to Walker's Title VII discrimination claim.

7

*Title VII Hostile Work Environment*

Additionally, Walker has lodged a claim for harassment under Title VII. In order to survive a motion for summary judgment on a hostile work environment claim, the Plaintiff must establish that (1) he is a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) that Defendant knew or should have known about the harassment and failed to take prompt action. EEOC v. W C & M Enter., Inc., 496 F.3d 393, 399 (5th Cir. 2007); Turner, 476 F.3d at 347 . Defendant argues that the allegations at issue were not based on race and that, further, the allegations were not sufficiently severe or pervasive to alter the terms and conditions of Walker's employment. In order to determine whether the harassment affected a term, condition, or privilege of employment, the court must evaluate "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." Walker v. Thompson, 214 F.3d 615, 625 (5th Cir. 2000) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

Indeed, "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" in order to establish a Title VII violation, DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.1995), but "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that will survive a motion for summary judgment. Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 328 (5th Cir. 2004). To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that

the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

Although Plaintiff's sworn statements that discriminatory conduct occurred may in some circumstances be sufficient to create a genuine dispute of material fact, the allegations must be definite and particularized. Barkley v. Singing River Electr. Power Assoc., 433 F. App'x 254, 258 (5th Cir. 2011) ("[Plaintiff] seemingly believes that his affidavit and deposition testimony should be sufficient. For some hostile work environment claims, a plaintiff's sworn testimony may be enough to raise a fact issue. Here, however, the allegations are ambiguous and generalized."). In light of this, the court has consistently upheld the dismissal of cases when the plaintiff's testimony is replete with generalized grievances and inconsistencies. See id.; Carrera v. Commercial Coating Services Int'l, Ltd., 422 F. App'x 334, 338 (5th Cir. 2011); Ramsey v. Henderson, 286 F. 3d 264, 269 (5th Cir. 2002).

In Carrera, for instance, the court considered the claims of several plaintiffs who proceeded in a consolidated action. One group of plaintiffs proffered a few concrete instances of harassment, but primarily relied on their generalized assertions that non-black employees were "harassed and degraded and humiliated on a constant basis" and that they were "consistently harassing and badgering with racial slurs and vulgarity" to support their claim. 422 F. App'x at 339. The court found that the allegations of "constant" abuse were insufficient without additional proof and that the concrete examples were too sparse to make a showing under the pervasive requirement. Id. Further, a plaintiff's unsupported allegation that a co-employee had attempted to run him over while on a field job was also insufficient. Id.

In the case at hand, the Court finds the facts presented by Plaintiff fail to create a genuine dispute of material fact regarding his claim for a hostile work environment. Although Walker's

9

response to the motion for summary judgment cites approximately a dozen purported references within Plaintiff's deposition testimony, an actual review of those references reveals only a handful of independent incidents. Walker's own description of the alleged racial harassment is particularly revealing.

When asked to explain why he chose to file an EEOC complaint, Walker stated, "I've had problems with Ricky Clay in the past…[a]nd the fact is Ricky Clay has made some racial slurs to me in the past. He's made some racial slurs to some other people in the past." Walker described only one instance in detail:

> Back when I was running pretreatment, Ricky Clay was just a regular operator. I went to relieve Ricky Clay one day and Ricky Clay said that—I said, 'How is it going, Ricky?' He said, 'Well, I had to n***** rig this old n***** shit. Oh, I'm sorry, man. I'm sorry. That's just my big, big mouth. That's my big mouth. That's just my big mouth. You know, I'm offensive.'

According to Walker, however, that single incident occurred in 2001 or 2002, nearly a decade prior to the filing of the instant suit.[1]

Based on the testimony of Walker, his only knowledge of other instances of specifically racially derogatory discourse was conveyed to him by an anonymous caller. He described those exchanges as follows:

> I have gotten a unknown phone call stating by I don't know who stating that Mr. Charles Clay has called me a n*****, along with someone in management, and he was recorded…I've gotten I think total of probably three calls. One of the time [sic] the guy says he was in management talking about the racial discrimination and all about the N. And I got one saying they worked not in management [sic]. They didn't mention any management and whatever. And I've got one from an operator.

---

[1] The Court notes that Walker's deposition does reveal one additional incident that at least Walker perceived to be racially derogatory. In his deposition, Walker claimed that he had been told by a co-employee that, "trying to be funny," Clay had stated to another employee, "That's the way you run these white boys." This incident, however, includes insufficient context and detail and is not even relied upon by Walker's response. Little, 37 F.3d at 1076.

Isolated incidences such as these are simply insufficient to constitute a change in the terms and conditions of a plaintiff's employment. See DeAngelis, 51 F.3d at 593 ("simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges"). Walker is able to cite no more than several potential incidents within a ten year period.[2] A handful of potential instances within a decade of work simply fails to give rise to an environment that is permeated with racism.

Moreover, what Walker's few specific allegations lack in number, they fail to make up in terms of severity. As indicated by the court, particularly serious incidents may be sufficient to preclude summary judgment even if the discriminatory conduct does not appear to have been frequent. Harris, 510 U.S. at 21, 114 S. Ct. 367 (noting that Title VII is violated when harassment is sufficiently severe *or* pervasive) (emphasis added). However, the "the required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." Dediol, 655 F. 3d at 442. Because Walker has produced competent evidence of only a handful of incidences, more would be required in terms of the severity of the alleged harassment to make up for the relatively few number of occurrences. Walker, however, does not contend that he felt physically threatened by the use of such language on these few occasions or that the few uses of racial epithets adversely affected his ability to work. See Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996) ("Title VII was only meant to bar conduct that is so severe [or] pervasive that it destroys a protected classmember's opportunity to succeed in the workplace."). Additionally, the conduct at issue here falls well short of that previously deemed

---

[2] Walker's other alleged instances of harassment bear no overt relationship to his race, and Plaintiff fails to even allege that there is a relationship. "A wide range of behaviors can make a workplace uncivil, but these plaintiffs must show as one of their factors for their Title VII claim that the events were based on race." Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 652 (5th Cir. 2012). Thus, the Court overlooks Walker's allegations concerning instances in which he was allegedly called a stupid or dumb "motherf*****" and was purportedly told "[i]t's sorry operators like yourself expect [sic] people to pay them to do observation and stuff."

sufficient to sustain a hostile work environment claim based on only a few instances of potentially racially derisive conduct. Faragher, 524 at 788, 118 S. Ct. 2275 ("standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code'…they will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'").

Viewing the facts in a light most favorable to Walker still only reveals a handful of isolated instances in which Walker was exposed to racially derogatory language. These instances were simply not severe or pervasive enough to alter the terms and conditions of his employment. The other instances cited by Walker, although uncivil, were not shown to be based on race. As such, Walker's hostile environment claim fails and Defendant's motion for summary judgment is to be granted as to his harassment claim as well.

## CONCLUSION

Because Walker has failed to show that he was treated less favorably than a similarly situated employee outside his protected class, he cannot establish a prima facie case of Title VII discrimination. Additionally, because he has not shown that the racial harassment he was allegedly subjected to was sufficient to alter the terms or conditions of his employment, he cannot establish a claim for hostile work environment under Title VII. Defendant's Motion for Summary Judgment [35] is therefore GRANTED.

SO ORDERED, this the 14th day of June, 2013.

    /s/ Sharion Aycock
**U.S. DISTRICT JUDGE**